IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **MARSHALL HUNTER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. :    4:21-cv-00232 |
| ) | |
| **THE UNITED STATES OF AMERICA,** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW Plaintiff Marshall Hunter and for her Complaint against Defendant UNITED STATES OF AMERICA, states as follows:

Jurisdiction and Venue

1. JURISDICTION: Jurisdiction is proper under 28 U.S.C. §1346(b). This Count is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, et seq. State action claims herein, if any, are brought pursuant to this Court's supplemental jurisdiction, 28 U.S.C. §1367.

2. An administrative claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, et seq., was timely made and served upon the Department of Veterans Affairs on March 26, 2020 and the same was denied by the agency by mail dated September 29, 2020, and this suit is subsequently filed within 6 months of agency denial and is timely under both the FTCA and Missouri law. A copy of said denial is attached as Exhibit 1.

3. VENUE: Venue is proper in this District pursuant to 28 U.S.C. §1402 and 28 U.S.C. §1346 as Plaintiff is and was at all relevant times a resident and citizen of this Judicial

1

District and the tortious acts or omissions complained of occurred within this Judicial District.

## COUNT I
Negligence

1-3.    Plaintiff incorporates the allegations of paragraphs 1 though 3 above as and for paragraphs 1 through 3 of Count I as if fully restated herein.

4.     At all times relevant hereto, Plaintiff is and was an adult resident and citizen of the State of Missouri who is an honorably discharged Veteran of the U.S. military;

5.     At all times relevant hereto, The Department of Veterans Affairs Medical Center at St. Louis, Missouri, [herein referred to as "St. Louis VAMC" and a/k/a "John Cochran VA Hospital"] were and are a part of the Department of Veterans Affairs, an agency of the U.S. government and did own, control, manage or operate a medical center and hospital in the City of St. Louis, State of Missouri, as well as facilities elsewhere in Missouri, and did employ physicians, nurses and other licensed medical professionals to practice medicine and/or their health-care related professions, and did hold itself out to the public and to Plaintiff as providing qualified medical and hospital services.

6.     At all times relevant hereto, the St. Louis VAMC was a part of the federal government or was a "Federal Agency" as defined in 28 U.S.C. §2671, et seq., and said Hospital and each individual herein named was acting within the scope of its agency or employment by the United States Department of Veterans Affairs.

7.     At all times relevant hereto, Plaintiff' was being treated as a patient at St. Louis VAMC, and the employees and agents of St. Louis VAMC owed to him the duty to provide hospital, nursing, and administrative services with the skill and care of a reasonable physician or

other health-care professional in the same or similar circumstances.

8. At all relevant times, Defendant UNITED STATES OF AMERICA acted by and through St. Louis VAMC and its actual and apparent agents and employees, including its physicians, administrators, nurses, technicians, social workers, aides, and including, but not limited to, each of the individuals named herein, and did hold each of said care providers out as its employee or agent, both by express statement and/or by action and uniform or insignia, and Plaintiff did rely upon such representations.

9. At all times relevant hereto Plaintiff was being treated for his eyesight and had entered into a physician-patient relationship with Jesse Shepard, M.D. and Jesse Himebaugh, MD, a VA physician, who this veteran saw of checkups on his eyes and for prescription of glaucoma medicines.

10. On or about May 16, 2018, Plaintiff presented to the VA eye clinic for a simple check on his glaucoma, however at that visit, Dr. Himebaugh informed Plaintiff that he would need a "YAG" laser procedure.  "YAG" stands for the crystal used in sourcing the laser, (yttrium, aluminum, garnet, which can be further doped with neodynium), and the procedure is more fully described as a YAG Laser Capsulotomy.

11. On or about June 28, 2018, Plaintiff presented to the VA eye clinic for his YAG procedure.

12. On that same day, Plaintiff was led to another office and placed in the YAG laser device.

13. No explanation was provided as to why Plaintiff needed any laser procedure at that time.

14. Plaintiff was not informed as to what the YAG procedure entailed or what it would do for him, and not informed of any risks.

15. Immediately upon the flash of the YAG laser, Plaintiff felt pain in his right eye.

16. Prior to the YAG Capsulotomy, Plaintiff was not suffering any cloudiness nor wrinkling of the posterior capsule, and did not have problems with his vision in his right eye and had not complained of such problems.

17. Defendant U.S.A. by and through the employees and agents of the V.A.M.C. facilities in St. Louis, Missouri committed one or more of the following negligent acts or omissions:

a) Defendant order and/or performed a YAG Laser Capsulotomy on Plaintiff without proper or adequate medical justification;

b) Defendant failed to perform adequate and proper testing on the appearance or function of Plaintiff's eye before performing a YAG Laser Capsulotomy;

c) Defendant failed to document any testing, observation or medical basis to justify performance of a YAG Laser Capsulotomy on Plaintiff;

d) Defendant performed a procedure on Plaintiff's right eye that was not medically necessary nor appropriate;

e) Defendant failed to provide adequate or any information of the reason or risk of the YAG laser procedure in these circumstances, and/or failed to obtain informed consent;

f) Defendant improperly set or adjusted the YAG Laser machine;

g) Defendant improperly focused or used the YAG Laser machine.

    h)    Defendant used inadequately trained technicians in performance of the YAG procedure on Plaintiff.

18.    As a direct and proximate result of the acts or omissions by the VA's employees and agents as set out above, Plaintiff was caused immediate physical pain from damage to his right eye including to his retina, and has suffered physical and emotional pain since and will into the future; Plaintiff has lost significant ability to see and/or to use his right eye, inability to drive or conduct his activities at night or in bright or darkened environments, increasing stress and decreasing and damaging his ability to enjoy life and conduct his affairs.

19.    As a direct and proximate result of one or more of the negligent acts or omissions and of the injury to his right eye as stated above, Plaintiff was caused to endure additional medical and/or surgical interventions and attempts to cure or relieve the effects of the damage caused, the need for additional medications and eyeware as well as continuing examinations and the deterioration of his eyesight further, and was caused to incur the expenses thereof and the same will continue into the future.

WHEREFORE, for the reasons stated above, Plaintiff Marshall Hunter prays this Court enter judgment in her favor and against Defendant United States of America in an amount reasonable and sufficient to compensate for her loss and damage, for costs of suit, and for such other relief as this Court deems just and proper.

## COUNT II
### Res Ipsa

COMES NOW Plaintiff Marshall Hunter and pleading in the alternative for Count II of his Complaint against of Defendant UNITED STATES OF AMERICA, states as follows:

1-16.     Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 16 of Count I above, as and for paragraphs 1 through 16 of Count II as if fully set out herein.

17.     Under usual conditions and under the control of qualified medical professionals, YAG Laser Capsulotomy procedures are considered to be safe.

18.     When maintained, set and operated correctly, YAG Laser Capsulotomy procedures will not damage the patient's retina.

19.     The YAG Laser Capsulotomy machine used on Plaintiff was wholly and fully in the possession and control of Defendant prior to and during the event complained of.

20.     Absence the negligence and/or improper setting, maintenance or use of the YAG Laser Capsulotomy device, damage to Plaintiff's retina would not have occurred.

21.     As a direct and proximate result of the negligent maintenance, setting, or use of the YAG Laser Capsulotomy by Defendant, Plaintiff was caused immediate physical pain from damage to his right eye including to his retina, and has suffered physical and emotional pain since and will into the future; Plaintiff has lost significant ability to see and/or to use his right eye, inability to drive or conduct his activities at night or in bright or darkened environments, increasing stress and decreasing and damaging his ability to enjoy life and conduct his affairs.

19.     As further  direct and proximate result of the negligent maintenance, setting, or use of the YAG Laser Capsulotomy by Defendant, and of the injury to his right eye as stated above, Plaintiff was caused to endure additional medical and/or surgical interventions and attempts to cure or relieve the effects of the damage caused, the need for additional medications and eyeware as well as continuing examinations and the deterioration of his eyesight further, and was caused to incur the expenses thereof and the same will continue into the future.

WHEREFORE, for the reasons stated above, Plaintiff Marshall Hunter prays this Court enter judgment in her favor and against Defendant United States of America in an amount reasonable and sufficient to compensate for her loss and damage, for costs of suit, and for such other relief as this Court deems just and proper.

THE LAW OFFICES OF DAVID N. DAMICK

/s/ David Damick
David N. Damick, MBEN 38903
One Metropolitan Square, Suite 2420B
211 North Broadway
St. Louis, Missouri 63102-2733
TEL: (314) 231-0570
FAX: (314) 621-8639
dnd@damicklaw.com
Attorneys for Plaintiff