**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MARSHALL HUNTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) | Case No. 4:21-cv-232-MTS |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment, Doc. [27], pursuant to Federal Rule of Civil Procedure 56, on two claims of negligence brought under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*  For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion.

\* \* \* \* \*

Plaintiff brings this suit against Defendant, the United States of America, for injuries sustained after an eye surgery was referred by and performed by two doctors from the Department of Veterans Affairs ("VA"): Dr. Banks Shepherd III and Dr. Jesse Himebaugh (collectively, "VA doctors").  The subject matter of this case is very technical and scientific.  Before the Court begins its discussion and analysis, some medical terms require definition and context.

The surgery at issue here is a "YAG laser procedure," which is performed when a posterior capsule fibrosis ("PCF") or a posterior capsule opacification ("PCO") interferes with a patient's vision.  A PCF or PCO is the growth of cells on a lens, typically a lens implanted after a cataract surgery.  In layman's terms, the YAG laser procedure is a common procedure used to burn off scar tissue often developed after cataract surgery that is interfering with a patient's vision.  Though the

1

part of the eye that the YAG laser procedure targets is the posterior capsule, the part of the eye at issue in this case is the "macula," which is the center of the retina.

I.   **BACKGROUND**

Plaintiff Marshall Hunter is an honorably discharged veteran who was regularly seen in the John Cochran St. Louis Veterans Medical ophthalmology clinic ("VA clinic"). He has a history of macular issues, beginning as early as 2005. *See, e.g.*, Doc. [27-3] at 14 (50:13–19), 14 (51:10–12); Doc. [27-5] at 2 (7:4–24), 5 (20:7–9), 6 (21:8–22:8). In 2013, Plaintiff had a cataract removed from his right eye and an artificial lens implanted. In May 2017, Dr. Shepherd noticed PCF in Plaintiff's right eye.

On May 16, 2018, Plaintiff complained to Dr. Shepard that his glasses no longer worked. Based on this complaint, Dr. Shepard performed an eye examination, which included a slit lamp examination ("SLEX") with a hand-held 90-diopter lens to examine Plaintiff's macula. Doc. [27-12]; Doc. [27-11] at 3. This examination resulted in Dr. Shepherd noting "PCF OD becoming visually significant," Doc. [27-11] at 3, which meant that the PCF that Dr. Shepherd had previously observed "had moved into the center of [Plaintiff's] vision." Doc. [27-2] at 5 (18:22–24). Dr. Shepard also noted "[m]inimal macular RPE changes OU." Doc. [27-11] at 3. Dr. Shepard referred Plaintiff for a YAG laser procedure ("surgery") on his right eye.

On June 28, 2018, Plaintiff arrived at the VA for surgery with Dr. Himebaugh. Prior to performing the surgery, pre-surgery testing and evaluation is necessary to ensure that the eye issue (here, vision loss) is stemming from the PCF and not any other issues within the eye, like the macula. There are several non-PCF eye issues that will render the surgery inappropriate.

Dr. Himebaugh performed a pre-surgery evaluation of Plaintiff's eye, which included a manifest refraction test ("MRX") to establish Plaintiff's retina refractions and a SLEX with a hand-

2

held 90-diopter lens to examine Plaintiff's macula. *See* Doc. [27-13]. Dr. Himebaugh noted he did not find "hemorrhage or edema" but did not document anything else related to the macula.[1] Based on his examination, Dr. Himebaugh determined there were no reasons (other than PCF) for Plaintiff's vision loss, and he performed the laser surgery. After surgery, Plaintiff reported severe vision problems, and Dr. Shepherd referred Plaintiff to a retinal specialist. Plaintiff required surgery on his retina, but he still suffers from vision issues.

Based on those events, Plaintiff initiated a two-count negligence complaint for medical malpractice based on the VA doctors' pre-surgery examination of Plaintiff and subsequent decision to perform the surgery (Count I) and the surgery itself, based on the doctrine of *res ipsa loquitur* (Count II). Doc. [1]. In the instant Motion, Doc. [27], Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## II.   LEGAL STANDARD

The Court "must" grant summary judgment when there is "no genuine disputes of material fact and [the movant] is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). The movant bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.*; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this initial burden, the non-moving party must offer evidence showing the existence of a genuine issue of material fact. *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1002 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). While the Court views

---

[1] Dr. Himebaugh's pre-YAG procedure note does not indicate the condition of Plaintiff's macula, but only the negative findings of no hemorrhage or edema, which is related to someone with diabetes or macular degeneration.

any factual disputes in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 380 (2007), a party will not withstand summary judgment with "[m]ere allegations, unsupported by specific facts or evidence beyond [his] own conclusions," *Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007). But, where sufficient evidence supports a factual dispute, it is up to the jury to resolve the dispute at trial. *Liberty Lobby*, 477 U.S. at 248–49. Also, if the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is "entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323. In reviewing the record at the summary judgment stage, the Court must not weigh evidence but, instead, simply decide whether there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 249.

**III.   DISCUSSION**

Defendant contends it is entitled to summary judgment for two reasons. First, Defendant asserts that Plaintiff's negligence claim (Count I) fails because the standard of care required the VA doctors to evaluate the health of Plaintiff's macula prior to the surgery, and the VA doctors performed the very test Plaintiff's expert identified. Second, Defendant argues that Plaintiff's *res ipsa loquitur* claim (Count II) fails because the experts—Dr. Todd Lefkowitz and Dr. Elizabeth Davis—admit that Dr. Himebaugh did not negligently perform the YAG laser surgery, and Plaintiff's injury does not fall within the exceptions for which expert testimony is unnecessary.

A. **Negligence** (Count I)

To state a claim of medical malpractice under Missouri law, Plaintiff must establish that the VA doctors "failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the [the VA doctors'] profession" and "that such failure

directly caused or contributed to cause the plaintiff's injury."[2] Mo. Rev. Stat. § 538.210.1 (statutory cause of action for medical malpractice under Missouri law).  In other words, Plaintiff must prove two elements: that VA doctors failed to meet the requisite standard of care and causation.  In the current Motion, Defendant moves for summary judgment on the first element only—that Plaintiff failed to show VA doctors' pre-surgery examination did not meet the standard of care.  But, the record does not support that assertion.  The Court finds that Plaintiff presented evidence from which the trier of fact could find VA doctors violated the standard of care during their pre-surgery examination and subsequent decision to perform the laser surgery.[3]

Several material factual disputes preclude the Court from determining whether the VA doctors met the standard of care as a matter of law.  It is undisputed that Plaintiff had macula/retina issues *prior* to surgery[4] and that performing laser surgery on a person with macular issues can cause or exacerbate such issues.  It is also undisputed that Plaintiff's macula is injured, and Plaintiff noted the injury immediately after surgery.  But it is unclear as to the exact diagnoses of Plaintiff's macular injury.  It is also unclear whether Plaintiff's retina/macula was injured during the surgery (e.g.: macular hole),[5] whether the surgery exacerbated a pre-existing macular condition (e.g.: macular telangiectasia), or whether the eye injury just happened to coincide with the surgery.

---

[2] The Court notes that the parties stated the incorrect standard for a medical malpractice claim under Missouri law. The parties put forth the elements for common law medical malpractice negligence, but a "common law cause of action for injury caused by the negligence of a health care provider no longer exists under Missouri law." *See Williams v. US Dep't of Health & Hum. Servs.*, 4:21-cv-1049-MTS, 2022 WL 3541691, at *2 (E.D. Mo. Aug. 18, 2022) (citing Mo. Rev. Stat. § 538.210.1 (abolishing "any [ ] common law cause of action" against a "health care provider for personal injury" arising out of the "rendering of" "health care services")).
[3] Plaintiff's expert, Dr. Lefkowitz, identified the tests necessary to evaluate the health of Plaintiff's macula and to meet the standard of care. Dr. Lefkowitz further explained that the VA doctors violated the standard of care in their pre-surgery examination and subsequent decision to perform the surgery. *See, e.g.*, Doc. [27-3] at 11 (40:11–16), 13 (46:2–12); *see also Bell v. Redjal*, 569 S.W.3d 70, 85 (Mo. Ct. App. 2019) (explaining a medical malpractice plaintiff is required to present expert testimony on the issues of the applicable standard of care and causation).
[4] But, the Court notes that the record is disputed as to the state of Plaintiff's retina and macula prior to surgery.
[5] Notably, there is even a dispute among the experts as to whether the YAG laser surgery can or cannot cause a macular hole.  *Comapre* Doc. [27-3] at 8 (27:25–28:11) (Dr. Lefkowitz deposition), *with* Doc. [27-5] at 2 (8:6–24), 3 (12:1–3) (Dr. Davis deposition).

There are also questions of fact regarding the VA doctors' pre-surgery examination of the macula. *See, e.g.*, Doc. [27-3] at 18 (60:9–10); *id.* at 11 (40:11–16). Namely, whether VA doctors performed a proper "workup" of Plaintiff prior to surgery, including properly evaluating the health of the macula. *See, e.g., id.* at 18 (68:1–19). This is especially important given the evidence of record that had there been a proper workup, doctors would *not* have performed the surgery, and Plaintiff would not be suffering the eye injuries that he currently has. *Id.* It follows then that there are other questions of material fact relating to whether Plaintiff was a proper candidate for the laser surgery. These include whether Dr. Himebaugh knew of Plaintiff's previous macular issues,[6] whether Plaintiff's pre-existing macular issues were ones that would preclude the surgery, and whether Plaintiff's pre-existing macular issues were ones that required further testing prior to surgery.[7]

These outstanding factual disagreements likely can be resolved only by a determination of the parties' credibility and the weighing of the evidence—but such matters are for a jury to resolve at trial, not the Court on a motion for summary judgment. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011))).

Defendant appears to argue, for a variety of reasons, that the litany of factual disputes does not preclude summary judgment. The Court finds that none are persuasive.

---

[6] As an example, Dr. Himebaugh stated in his deposition that he had reviewed Dr. Shepard's notes prior to surgery, Doc. [27-6] at 8 (32:12–14), at 10 (39:20–21), but that he did not notice a possible defect in the macula from Dr. Shepard's report, *id.* at 10 (39:12–15), despite Dr. Shepard's report stating: "[m]inimal macular RPE changes OU," Doc. [27-11] at 3.

[7] As an example, more in-depth or alternative pre-surgical testing may have been required to be performed given Plaintiff's macular history. *See, e.g.*, Doc. [27-3] at 12 (43:12–22) (SLEX examination cannot diagnose macular telangiectasia); Doc. [27-6] at 13 (48:1–10) (SLEX examination may not diagnose a macular hole).

Despite Defendant consistently pointing out that the specific diagnosis of Plaintiff's macular injury is disputed, Defendant argues that some of the potential injuries are assumed risks of the surgery and therefore there could be no negligence. But, the Supreme Court of Missouri has made clear that "evidence of alleged informed consent is irrelevant . . . in a medical malpractice case based on negligent performance of care" because such consent does not vitiate a physician's duty to provide treatment according to the ordinary standard of care. *Wilson v. P.B. Patel, M.D., P.C.*, 517 S.W.3d 520, 525 (Mo. banc 2017). As an example, even if Plaintiff consented to the surgical risk of "[d]amage to the eyes or nearby structures," Doc. [37-1] at 2, like Plaintiff's macula, such consent would not vitiate Dr. Himebaugh's duty to properly evaluate Plaintiff's macula and then decline surgery based on Plaintiff's macular issues.

Defendant next argues that the VA doctors' failure to properly notate the health of the macula cannot be used alone to conclusively prove that the VA doctors did not adequately perform the examination. Doc. [39] at 20. While the VA doctors' lack of a notation cannot, by itself, prove negligence via an inadequate examination, there *is* other evidence in the record that the examination may have been inadequate, notably, evidence of a direct correlation between a pre-existing macular issue and Plaintiff's eye injury post-surgery. *See* Doc. [27-3] at 17 (63:20–25), 12 (43:1–16), 14 (50:13–19); Doc. [27-5] at 2 (8:1–24), 4 (15:1–7), 5 (20:7–9).

Defendant also argues it could not have been negligent because both VA doctors performed one of the methods used for evaluating Plaintiff's macula. Doc. [28] at 6–9; Doc. [39] at 11–14. But the fact that a test was performed does not necessarily mean that the test was performed *properly* or *adequately*. Additionally, even assuming the test was performed properly, under the circumstances here, performing that one test, even adequately, may not have been adequate to determine Plaintiff's macular health, especially given his history.

7

In conclusion, the Court cannot find, on this record, as a matter of law, that the VA doctors met the requisite standard of care during their pre-surgery evaluation of Plaintiff's macular health and subsequent decision that Plaintiff was a proper candidate for the laser surgery. As such, the Court finds Defendant, the moving party, failed to meet its burden as to Count I. *See* Fed. R. Civ. P. 56(a); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (explaining the moving party discharges its burden on summary judgment by demonstrating an absence of a genuine dispute of material fact).

B. **Res Ipsa Loquitur** (Count II)

To make a submissible case of negligence under the *res ipsa loquitur* doctrine, Plaintiff must establish three elements: (1) the incident would not ordinarily occur in the absence of negligence; (2) the incident was caused by an instrumentality under the defendant's control; and (3) the defendant has superior knowledge about the cause of the incident. *Green v. Plaza in Clayton Condo. Ass'n*, 410 S.W.3d 272, 282 (Mo. Ct. App. 2013) (citing *Sides v. St. Anthony's Med. Ctr.*, 258 S.W.3d 811, 814 (Mo. banc 2008)). Technically speaking, *res ipsa loquitur* is a rule of evidence that "permits the jury to infer negligence without direct proof" of specific negligence and "supplies circumstantial evidence of a breach when the plaintiff lacks the facts to [show] the specific negligent conduct that constituted the breach." *Martin v. City of Washington*, 848 S.W.2d 487, 495 (Mo. banc 1993). In other words, the "doctrine is used in cases in which it is not clear exactly what caused an injury, but all the probable causes are within the control or right to control of defendant." *Sides*, 258 S.W.3d at 814.

At issue here is the first element—whether Plaintiff's injury is itself one that does not occur in the absence of negligence. Plaintiff may meet his burden on this element in one of two ways. He can either offer expert testimony that "such an [injury] usually does not occur without

8

negligence" by the physician. *Sides*, 258 S.W.3d at 816. Or Plaintiff can show expert testimony is unnecessary because he received "an unusual injury to an area of the body unaffected by the operation or treatment."[8] *Id.* at 814–15 (quoting *Hasemeier v. Smith*, 361 S.W.2d 697, 700 (Mo. banc 1962)). Defendant argues Plaintiff cannot meet his burden with or without expert testimony. The Court agrees.

Plaintiff does not offer any physician or expert testimony asserting that his eye injury does not occur in the absence of negligence by the VA doctors.[9] *Sides*, 258 S.W.3d at 816 (explaining expert testimony that "such an event usually does not occur without negligence may afford a sufficient basis for the inference" of negligence). To the contrary, expert testimony shows that some possible eye injuries, like the ones Plaintiff's injury may be, are known risks of the procedure.[10] *See, e.g.*, Doc. [27-5] at 4 (13:1–6) (explaining YAG laser surgery has a risk of causing a macular hole or retinal detachment); *see also* [37-1] at 2 (consent form signed by Plaintiff for YAG laser surgery stating known risks are "[d]amage to the eyes or nearby structures" or "[c]hanges in vision, double vision, or blurring"). Importantly, here, this claim (Count II) is premised on whether there was negligence *during* the surgery and not whether there was negligence in *choosing* to perform the surgery, as in Count I. But the only evidence or inference of negligence in the record relates to the decision to perform the surgery—not Dr. Himebaugh's performance of the surgery itself, as Plaintiff's *own* expert makes clear. *See* Doc. [27-3] at 8 (28:12–30:1).

---

[8] While Missouri law recognizes two well-established exceptions for which expert testimony is unnecessary for a *res ipsa loquitur* claim, the Court will only analyze the applicability of the first exception because the second exception is inapplicable to this case. *Sides*, 258 S.W.3d at 814–15 (explaining expert testimony is not required where (1) the patient receives an unusual injury to an area of the body unaffected by the operation or treatment; or (2) the physician left a foreign object in an operative cavity, as even a lay person can assess negligence in such a case.

[9] The Court notes that both experts, including Plaintiff's own expert, concluded that Dr. Himebaugh did not negligently perform the YAG laser surgery.

[10] These risks, however, do not vitiate the VA doctors duty to properly evaluate Plaintiff's macula and possibly decline surgery based on Plaintiff's macular issues, as the Court explained above in Count I.

9

Nor can Plaintiff show he can meet his burden *without* expert testimony.  Plaintiff argues the "unusual" injury exception applies in this case because the retina and macula were not intended targets of the laser surgery.  While true, an injury of this nature is not an "unusual" injury as contemplated by this doctrine, like, for example, where a patient suffered an injury to her arm while undergoing back surgery.  *Graham v. Thompson*, 854 S.W.2d 797, 799 (Mo. Ct. App. 1993) (explaining scenarios where *res ipsa loquitur* was found applicable in malpractice actions).  Here, Plaintiff suffered an eye injury during an eye surgery.  While unfortunate, it is not unusual.[11]  *See id.* at 802 (explaining "unusual" injuries are ones that are "not a typical occurrence or not the result of a necessary risk to the type of" surgery performed).  As such, Plaintiff has failed to show he meets the non-expert exception to prove the first element of the doctrine.

The Court grants summary judgment in favor of Defendants on Count II because Plaintiff has not shown that his eye injury is of a type that does not occur unless someone acted negligently.  *Celotex*, 477 U.S. at 322–23 (requiring a plaintiff "to make a showing sufficient to establish the existence of an element essential to his case" because "a complete failure of proof concerning an essential element of his case necessarily renders all other facts immaterial").

## CONCLUSION

The Court denies summary judgment on Count I because Defendant failed to demonstrate the absence of a genuine dispute of material fact.  As to Count II, the Court grants summary judgment in favor of Defendant because Plaintiff cannot meet the first element of his negligence claim under the *res ipsa loquitur* doctrine.

---

[11] For similar reasons, to permit recovery permit recovery under this doctrine *without* expert testimony, there is a prerequisite "that laymen know, based on their common knowledge or experience" that the undesirable outcome would not have occurred unless the defendant physician was negligent.  *Sides*, 258 S.W.3d at 815 (quoting *Hasemeier v. Smith*, 361 S.W.2d 697, 701 (Mo. banc 1962)).  But here, that is not the case as Plaintiff's injury is very technical and specific.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [27], is **GRANTED** in part and **DENIED** in part.

Dated this 1st day of September, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE